## No. 9579.

### NEW ORLEANS ELEVATED RAILWAY COMPANY vs. MAYOR AND COUNCIL OF NEW ORLEANS.

An injunction *in limine* does not lie to prevent the mayor of a municipal corporation from signing an ordinance passed by the council, purporting to repeal a previous ordinance and contract under it.

*Non constat,* that the mayor will sign the ordinance, or that the council will pass it over his veto if returned unsigned, or that it will become executory.

It is not until after such ordinance has been signed, or become executory, that its validity can be judicially contested and determined.

Otherwise, the court would be exposed to adjudicate on the legality of an ordinance merely *in embryo,* which may never be signed or acquire vitality.

Courts of justice have enough to do in dealing with real, existing and actual wrongs, without anticipating and combatting hypothetical evils of the future which may or not arise.

A decree dissolving an injunction *in limine*, issued to prevent the signature by a mayor of an ordinance passed by the council, and a judgment sustaining an exception of "no cause of action," under insufficient averments of the petition, are correct and will not be disturbed on appeal.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*Blanc & Butler*, for Plaintiff and Appellant:

A.

1. Where an injunction against the mayor and the council of the city restrains the signing and promulgation of an ordinance and also the enforcement of it, it may be dissolved so far as it restrains the signing and promulgation, and maintained so far as it prevents the enforcement or operation of the ordinance.

2. If an appeal be taken from such a judgment and not joined in by the city, the judgment is final so far as it maintains the injunction to prevent the operation and enforcement of the ordinance.

3. Where plaintiffs set forth a contract valid and binding, and their fulfillment thereof, and show further that one of the contracting parties has refused to comply with its obligations, and without a hearing or discussion of any kind has attempted to forfeit and annul the contract, in violation of the Constitutions of the State and United States, a cause of action is set forth.

4. The contract naming a committee of a council to see that the lines and the grades for the structure, and that the position of the work in the route, be correct, has no power to change the route itself, or to make a substantial modification of the franchise itself. Dillon's Mun. Corp., p. 477, sec. 483; 5 Peters, 1.

5. The grant of the right of way through St. Charles street, with the naming of a committee to fix the lines. grades and positions of the structure, does not authorize such a committee to change the right of way from the street named to another. So, where the franchise is for a right of way along the river front, and the whole purpose of the enterprise and the object of the grant is to provide an elevated structure on the river's edge or front, it is not in the power of the committee appointed to supervise and see that the structure is erected and placed in the proper position and with proper lines and grades, to change the right of way from the front to the back, or from the indicated route to another which is entirely destructive of the whole purpose and intent of the contract.

6. Where the approval of a council and its committee is required for the plans, surveys, grades and positions in the indicated route, it is not possible for the company, under their contract, to do any more work after the completion of said plans and surveys and the submission to the council and committee, until the committee and council shall have approved.

B.

7. In matters of contract the city of New Orleans is to be regarded as an individual, and is controlled by the same laws, the same principles of equity, the same articles of the Constitution. State of Louisiana ex rel. Bermudez vs. Mayor of New Orleans, 20 Ann. 173, 174; Rice vs. Schmidt, 11 La. 72.

8. The city of New Orleans is not a co-ordinate department of the government, it is not the legislature, nor entitled to the immunity from judicial control allowed co-ordinate departments. Arnoult vs. New Orleans, 11 Ann. 54; Spring Valley Waterworks Company Case, Vol. 2, p. 25; 5 Saw. 217; 19 U. S. 433; 9 N. Y. 270.

9. The only method to destroy a title or franchise is by forfeiture for non-user or misuser, *judicially* ascertained. The city council, indeed, the legislature itself, have no power to forfeit or annul their contracts, stating that the party had not complied with them.

Railway Company vs. Mayor and Council.

That is a judicial function, to be exercised only after a hearing and proper trial. Benson vs. Mayor of New York, 10 Barb. 224; Carondelet Canal and Navigation Company Case, 36 N. Y. p. —.

10. The city of New Orleans is a corporation of very limited power. It has no legislative (so-called) powers, except as clearly given by its charter. The moment it goes beyond these special grants of authority, the council become a mob, and are not entitled to injure citizens, impair rights, slander titles, or do any harm in defiance of judicial control. Dillon's Municipal Corporations, secs. 18, 19, and note; 43 Iowa, 48.

11. The assertion that a city council, sitting in the form of a legislature, acting in the form of an assembly, cannot be enjoined from passing an ordinance, however illegal, corrupt or wrong, is not only not good law, but is an absurdity not sustained by any decision known to counsel.

12. The true doctrine.is, that courts of equity may enjoin the passage of an ordinance which is entirely beyond the power and authority of the council to pass. Spring Valley Waterworks Company Case; American and English Corporation Cases, Vol. 2, p. 25; People vs. Sturtevant, 9 N. Y. 270.

13. If the passage of an illegal ordinance cannot produce the least effect, and require some act to be done under it before anyone can be effected thereby, the courts will not generally arrest the passage, but will wait until some step is taken under it.

14. But the passage of the ordinance itself will be arrested by injunction, when the mere act of passage, as in the case of an attempted repeal of rights, will work irreparable injury.

15. It is obvious that the repeal of an important franchise granted by the council will so overshadow and cast doubt upon such franchise as to make it impossible to procure capital or exercise any rights upon said franchise. Men will not place their money in matters involved in law suits or at the time in dispute.

16. Were it true that a city council could not be enjoined in the passage of any kind of an ordinance, because the city council is a legislature, the same doctrine would prevent the courts from commanding such a legislature to do anything. But no one denies that the courts have a right to command the city legislature to take their legislative seats and pass ordinances to carry out their contracts and perform their obligations. There can be no good reason why the passage of an utterly illegal and wrongful act should not be enjoined, when the execution of the same may be arrested by injunction. The same grounds which would permit an injunction give power to prevent the passage.

17. Equity favors prevention. It is better to prevent a threatened wrong than to await the injury before applying a remedy. Hugh on Injunctions, §§ 21, 147, 269; 49 Barb. 57; 32 Barb. 102, 104; Story's Equity, 907; 14 N. Y. 506; 17 Barb. 445; 10 Barb. 226.

*W. H. Rogers,* City Attorney, for Defendant and Appellee.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiff company appeals from two judgments, one an interlocutory decree, dissolving in part an injunction issued *in limine;* another, a final judgment sustaining an exception of *no cause of action,* dismissing the suit.

The fundamental averments are: That the Council of the city of New Orleans has passed an ordinance, the object of which is to *repeal* another ordinance, under the provisions of which a valid contract was entered into between the plaintiff company and the corporation; that

9

the ordinance was sent to the Mayor for his signature; that the passage, signature and promulgation of the ordinance are unfair, unjust, utterly and outrageously unlawful, beyond the power of the city, and a violation of the previous ordinance and the contract thereunder; an attempt to divest vested rights and to impair the obligations of a contract, contrary to the Federal and State Constitutions.

The prayer is, that the Mayor and Councilmen be enjoined from signing, promulgating, recording, enforcing or giving effect to, the ordinance purporting to *repeal* the anterior ordinance, until the further order of the court; and that, after due proceedings, the injunction be perpetuated, and the attempted repeal and ordinance or enactment be declared null and void.

On those averments, a preliminary injunction issued, which, however, on a rule to dissolve, was set aside, as far as it restrains the passing, signing or promulgation of the ordinance or resolution complained of.

An exception of "no cause of action" was subsequently filed and sustained, and the suit was dismissed with costs.

We have carefully considered the authorities referred to by plaintiff's counsel, but do not propose to contest the correctness of the rulings relied on. It suffices to say, that, in none of the cases does it appear that a suit kindred to the present one, was instituted and passed upon.

There can be no possible dispute that, where a municipal corporation has passed a valid ordinance and under it has entered into a valid contract, subsequently carried out, the Council has no right to pass an ordinance repealing the ordinance and the contract, on false grounds; that such ordinance would be absolutely null, and that a court of justice would so declare.

It does not, however, follow that, where the ordinance was simply passed, and is in the hands of the corporation executive officer, the Mayor, the court has the right to issue an injunction *in limine* to prevent that official from considering the ordinance and approving it by his signature, in the exercise of his discretion, should he deem proper to do so.

The court would have a right to presume that the Mayor will do his duty, and that, if he finds that the submitted ordinance is *ultra vires*, he will *veto* it, and that the Council itself will yield and sustain the *veto*, and thus recall the ordinance. *Non constat* that this will not be the course of the Mayor and of the Council.

But, were it true that the Mayor would sign and promulgate the or-

dinance, unless impeded by the court, such signature and promulgation of the ordinance *proprio vigore* could not, and therefore would not make the repeal effectual, if such action was prohibited by law, as *ultra vires*.

The plaintiff claims that, under the provisions of the ordinance (No. 215, Council Series), adopted on March 20, 1883, giving, granting and establishing the franchise and right of way for an elevated railway along the river front, from the lower, or near the lower limits, to the upper boundary of the city of New Orleans, which ordinance conferred rights and imposed obligations—the plaintiff company has entered into a contract with the city on the 28th of April following, (1883), which is binding and indissoluble.

It is further alleged that, in furtherance of said ordinance and con·tract, the company has fully carried out all such of its engagements as were susceptible of execution, and that, without a hearing, and while certain matters were pending before a committee, the Council has undertaken illegally to pass the repealing ordinance complained of, and already mentioned.

It is apparent that the petition discloses no cause of action for an injunction, *in limine*, for the obvious reason that the application is premature.

In the case of State ex rel. Behan vs. Judge, 35 Ann. 1075, (1081), in which a preliminary injunction had been issued to prevent the City Council from proceeding to the impeachment of the City Treasurer, the Court held, that the general rule is, that courts cannot impede by preliminary injunction, the usual functions of a municipal corporation; but that this rule is subject to very few exceptions, where, from the nature of the act to be performed, and of the consequent inevitable and irreparable injury to public interest, the proposed action of the corporate body may be reached otherwise by the arm of the judiciary.

In so holding, the court rested its conclusions on good authority. Dillon on M. C., 3d ed., vol. 1, No. 94, vol. 2, No. 908; High on Injunctions, Secs. 783, 795; Slaughterhouse Co. vs. Police Jury, 32 Ann. 1192; Harrison vs. New Orleans, 33 Ann. 222; Healy vs. Allen, 38 Ann. ——.

The injunction issued *in limine* by the district judge was declared by this court to have been illegally granted, and the judge was prohibited from giving it effect.

In the present instance, the resolution passed does not direct the active or physicial performance of any act which may inflict injury on the plaintiff.

It is not minatory, but merely declaratory that a previous ordinance is repealed, because of breach of the contract under it.

As much as any individual citizen, a municipal corporation has a right to think and *to say* that a contract, to which it is a party, is a nullity and to repudiate it, as far as practicable.

Such statement, of course, does not *of itself*, do away with the ordinance, or contract made in furtherance of it, as it is a mere declaration, or expression of opinion, not required by law to be uttered, as a condition precedent to obtain eventual relief and the contract may well stand, notwithstanding it, *provided*, the enunciation be not founded on grounds sufficient to substantiate and justify it.

It is not until after the ordinance shall have been signed by the Mayor, or been passed over his *veto*, or have become final by the lapse of time, that its validity can be judicially contested and determined.

Otherwise the court would be exposed to adjudicate upon the legality of an ordinance merely *in embryo*, which may never be signed, or never become definitive.

As was said, in 29 Ann. 272, and repeated with approbation in 32 Ann. 1196-7 :

" Courts of justice have enough to do in dealing with real, existing and present wrongs, without anticipating and combating hypothetical evils of the future, which may or may not arise."

The dissolution of the preliminary injunction and the dismissal of the suit, on the exception, were proper.

Judgments affirmed.